UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN HUNTER,

       *Petitioner*,

  v.

UNITED STATES PAROLE
COMMISSION,

       *Respondent*.

Civil Action No. 24 - 2436 (LLA)

### MEMORANDUM OPINION

Petitioner Steven Hunter is on parole in connection with a sentence imposed nearly three decades ago. Proceeding pro se and *in forma pauperis*, he has filed a petition for a writ of habeas corpus alleging that the U.S. Parole Commission is subjecting him to an unlawful term of supervised release. ECF No. 1, at 1.[1] The Commission has filed a motion to dismiss, ECF No. 11, and Mr. Hunter has filed a motion for a status report, ECF No. 13. For the reasons explained below, the court will grant the Commission's motion, dismiss the petition, and deny Mr. Hunter's motion for a status report as moot.

          **I.    LEGAL BACKGROUND**

Before 2000, judges of the Superior Court of the District of Columbia imposed indeterminate sentences on criminal defendants, meaning that the judge imposed a sentencing range for a count of conviction—for example, a term of imprisonment of five to fifteen years—and,

---

[1] The citations in ECF Nos. 1, 11-2, 11-3, 11-8, and 11-10 refer to the ECF-generated page numbers at the top of each page, rather than any internal pagination.

after the defendant had served the minimum term, he could be released on parole. *See* D.C. Code § 24-403.[2] Through a series of federal and District laws, the scheme of indeterminate sentences and parole was replaced by a system of determinate sentences—a fixed term of imprisonment of which the defendant would serve at least 85%—followed by a term of supervised release. *See* National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33 § 11212, 111 Stat. 712, 741-44; Truth in Sentencing Amendment Act of 1998, D.C. Law 12-165, 45 D.C. Reg. 2980; Sentencing Reform Amendment Act of 2000, D.C. Law 13-302, 47 D.C. Reg. 7249 (2001). The new sentencing regime applied to defendants who committed felonies on or after August 5, 2000, *see* D.C. Code § 24-403.01, but defendants sentenced for felonies committed before that date remained under the indeterminate sentencing system.

Two decades later, in 2020, in response to the COVID-19 pandemic, the Council of the District of Columbia passed a series of laws permitting incarcerated defendants to seek compassionate release if they met certain criteria, resulting in D.C. Code § 24-403.04. Around the same time, the Council enacted a series of criminal-justice reforms that, as relevant here, altered the landscape for defendants who had been sentenced under the pre-2000 indeterminate regime in one important respect: provided that the defendant met the conditions for receiving what is known as "good time credit" under 18 U.S.C. § 3624(b), he could retroactively receive a credit toward his sentence of up to fifty-four days for each year of incarceration. Omnibus Public Safety and Justice Amendment Act of 2020, D.C. Law 23-274, § 1203(a), 68 D.C. Reg. 1034 (2021) (codified at D.C. Code § 24-403.01a). In most circumstances, the credit applies at both ends of the indeterminate

---

[2] Parole allows a person serving a sentence to "return[] to society under the 'guidance and control' of a parole officer.'" *Hill v. U.S. Parole Comm'n*, No. 16-CV-1476, 2017 WL 2414446, at *8 (D.D.C. June 2, 2017) (quoting *Mistretta v. United States*, 488 U.S. 361, 363 (1989)).

sentence, meaning that the minimum term of imprisonment a defendant must serve before becoming eligible for parole is reduced by the amount of good time credit received and the maximum term is similarly reduced. D.C. Code § 24-403.01a(a)(2). Importantly, however, the good time credits are only relevant for a defendant who is "serving a term of imprisonment." *Id.* § 24-403.01a. When a defendant is on parole, he "shall remain in the legal custody and under the control of the Attorney General of the United States . . . until . . . [t]he expiration of the maximum of the term or terms specified in his . . . sentence without regard to good time allowance." *Id.* § 24-404(a)(1).

## II.     FACTUAL BACKGROUND

On February 1, 1996, Mr. Hunter was convicted in Superior Court of assault, assault with a dangerous weapon, aggravated assault, and first-degree burglary. ECF No. 11-1, at 1; *see United States v. Hunter*, No. 1995-FEL-4276 (D.C. Super. Ct.).[3] He was sentenced to one year of imprisonment for the assault, three to nine years of imprisonment for the assault with a dangerous weapon, and five to fifteen years of imprisonment for both the aggravated assault and first-degree burglary. *See* ECF No. 11, at 2; Feb. 1, 1996 Docket Entry, *Hunter*, No. 1995-FEL-4276 (D.C. Super. Ct.). The court ordered the sentences on the counts of assault with a dangerous weapon and aggravated assault to run concurrently, but consecutive to the other counts, meaning that Mr. Hunter received an aggregate sentence of thirty-one years of imprisonment but would be eligible for parole after he had served one-third of that sentence. *See* ECF No. 11, at 2; ECF

---

[3] The court takes judicial notice of "public records from other court proceedings." *Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011). That includes "docket sheets and other court documents." *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 144 n.2 (D.D.C. 2011).

No. 11-2, at 5; Feb. 1, 1996 Docket Entry, *Hunter*, No. 1995-FEL-4276 (D.C. Super. Ct.); D.C. Code § 24-403(a).

The Commission released Mr. Hunter on parole on February 3, 2014 and projected that his parole term would end on August 1, 2026. ECF No. 11-1, at 1-2; ECF No. 11-3, at 2. Almost eight months later, the Commission alleged that Mr. Hunter had violated the conditions of his parole based on a new arrest in North Carolina. *See* ECF No. 11-1, at 2. In February 2015, after a hearing, the Commission revoked his parole and issued a new "presumptive parole" date in October 2019. *Id.* The National Appeals Board, a component within the Commission that "decide[s] appeals taken from decisions of a Regional Commissioner," 28 C.F.R. § 2.1(c) (2025), affirmed the revocation, ECF No. 11-1, at 3.

In August 2019, the Commission reviewed Mr. Hunter's case to determine whether his conduct was "satisfactory," 28 C.F.R. § 2.34(a), and warranted his release on parole, ECF No. 11-6, at 1. Noting that Mr. Hunter had been found guilty of several disciplinary infractions while incarcerated, the Commission delayed his presumptive parole date until it could hold a hearing to consider the violations and any mitigating evidence. ECF No. 11-6, at 1, *see* 28 C.F.R. § 2.34(b)-(c). At the hearing in April 2020, the Hearing Examiner recommended that Mr. Hunter serve an additional four years in prison rather than be released on parole. ECF No. 11-1, at 7, 12. In May 2020, the Commission adopted the Hearing Examiner's recommendation, which effectively moved Mr. Hunter's presumptive parole date to October 2023. EFC No. 11-7, at 1.

In the wake of the COVID-19 pandemic, Mr. Hunter moved for compassionate release. *See* ECF No. 11-17, at 4; *see also* D.C. Code § 24-403.04. In December 2021, the Superior Court granted the motion and ordered his release to supervised probation. *See* ECF No. 11-8, at 2; ECF No 11-9. The next month, Mr. Hunter was arrested in North Carolina for a misdemeanor offense.

4

ECF No. 11-10, at 2. Following a bench trial, a North Carolina judge adjudicated Mr. Hunter guilty and sentenced him to 185 days in jail. *Id.* at 4. After serving the North Carolina sentence, Mr. Hunter was extradited to the District of Columbia, where, in April 2023, the judge who had granted his motion for compassionate release revoked his probation and resentenced him to a determinate sentence of thirty-one years of incarceration, with credit for time served, to be followed by two years of supervised release. ECF No. 11, at 4; ECF No. 11-11. However, because Mr. Hunter had committed his offenses in 1995 when the District still used an indeterminate sentencing system, he was not eligible for a determinate sentence and a term of supervised release. Accordingly, the D.C. Court of Appeals vacated Mr. Hunter's sentence and remanded for the Superior Court to resentence Mr. Hunter under the indeterminate sentencing scheme. *Hunter v. United States*, No. 23-CO-0347 (D.C. Jan. 8, 2024). On remand, the Superior Court reimposed the original indeterminate aggregate sentence of thirty-one years of imprisonment that Mr. Hunter had received in 1996, meaning that he would again be eligible for, and was indeed placed on, parole. ECF No. 11-13; ECF No. 11-15.

In April 2024, the Commission alleged that Mr. Hunter had violated the conditions of his parole by failing to report to a supervisor as directed and, as a result, he was taken into custody pending a parole revocation hearing. ECF No. 11-14. In June 2024, after the supervisor failed to appear at the revocation hearing, the Commission reinstated Mr. Hunter's parole. ECF No. 11-17. Mr. Hunter has remained on parole since then, and his parole is scheduled to end on December 3, 2027. *Id.* at 3; *see* ECF No. 11-2, at 3; ECF No. 11-13, at 2.

### III.   PROCEDURAL HISTORY

On August 16, 2024, Mr. Hunter filed a petition for a writ of habeas corpus. ECF No. 1. He alleges that he is "serving an unlawful and unconstitutional term of supervised release by the

5

United States Parole Commission" because the "sentence imposed" in his Superior Court case already has "been . . . served." *Id.* at 1-2. The Commission has moved to dismiss, contending that because Mr. Hunter is on parole, and not supervised release, he has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* ECF No. 11. Because Mr. Hunter is proceeding pro se, the court issued a *Fox*/*Neal* order informing him that he needed to respond to the Commission's motion to dismiss on or before January 21, 2025 or risk having the motion granted as conceded. ECF No. 12; Local Civ. R. 7(b). Mr. Hunter did not respond to the motion, but on April 18, 2025, he filed a motion for a status report regarding his case. ECF No. 13.

Mr. Hunter also has filed several related actions, including another habeas petition against the Commission challenging his "term of parole" as "unlawful" because he "ha[s] served [the] entire sentence" already. Pet. for Writ of Habeas Corpus at 2, 6, *Hunter v. U.S. Parole Comm'n*, No. 24-CV-2622 (D.D.C. Sep. 9, 2024), ECF No. 1.[4] He has also filed a habeas petition against the Warden of the D.C. Jail. *See* Pet. for Writ of Habeas Corpus, *Hunter v. Warden*, No. 24-CV-2121 (D.D.C. Dec. 16, 2024), ECF No 1. In that petition, Mr. Hunter expands on the allegations he makes here. He claims that under D.C. Code § 24-403.01a, he is entitled to retroactively receive four years of good time credit, which would reduce the length of his sentence such that he already has served the entire term. ECF No. 1, at 2.[5] And, in a third habeas petition—this one against the federal BOP—Mr. Hunter contests the "validity" of his placement on parole due to "BOP['s] failure to retroactively award [him] good time credit." Pet. for Writ of Habeas

---

[4] The citations to the habeas petitions in these cases refer to the ECF-generated page numbers at the top of each page, rather than any internal pagination.

[5] Mr. Hunter also filed a mandamus petition, requesting the court order the Warden to command BOP to show why he has not completed his sentence. Pet. for Writ of Mandamus, *Hunter v. Warden*, No. 24-CV-2121 (D.D.C. Dec. 16, 2024), ECF No. 3.

Corpus at 2, *Hunter v. Fed. Bureau of Prisons*, No. 25-CV-1176 (D.D.C. Apr. 11, 2025), ECF No. 1.

### IV.     LEGAL STANDARDS

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

The court is mindful when applying this framework that Mr. Hunter is proceeding pro se. "It is well established that a court must 'liberally construe' the pleadings of pro se parties and hold such pleadings 'to less stringent standards than formal pleadings' that lawyers draft." *Morgan v. U.S. Parole Comm'n*, 304 F. Supp. 3d 240, 247 (D.D.C. 2016) (quoting *Erickson*, 551 U.S. at 94). "In assessing whether dismissal is warranted, a court considers all of a pro se litigant's filings, including attachments and any opposition filed." *Groce v. Rodriguez*, 743 F. Supp. 3d 244, 248 (D.D.C. 2024); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151-52 (D.C. Cir. 2015) (per curiam).  A court also may consider "matters of which [it] may take judicial notice." *N. Am.*

7

*Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).  Mr. Hunter's pro se status, however, is not "a license to ignore the Federal Rules of Civil Procedure."  *Morgan*, 304 F. Supp. 3d at 247 (quoting *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009)).  That is because "even a pro se plaintiff must meet his burden of stating a claim for relief."  *Tyson v. Brennan*, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (quoting *Horsey v. U.S. Dep't of State*, 170 F. Supp. 3d 256, 263-64 (D.D.C. 2016)).

## V.   DISCUSSION

The Commission argues that Mr. Hunter's habeas petition contains a fatal defect: whereas Mr. Hunter contends that he is serving an unlawful term of supervised release, he is actually serving a term of parole that lawfully expires in December 2027.  ECF No. 11, at 6-9.  After considering Mr. Hunter's petition, his filings in the related cases, and the Commission's motion to dismiss and accompanying exhibits, the court concludes that Mr. Hunter's status as a parolee forecloses his claim for relief and the petition must be dismissed.

As explained, Mr. Hunter was originally sentenced in February 1996 under the District's indeterminate sentencing scheme to an aggregate term of thirty-one years of imprisonment with eligibility for parole after serving one-third of the sentence.  ECF No. 11-1.  He was subsequently released on parole, reincarcerated for violating the terms of his parole, granted compassionate release to probation, and then found to have violated the terms of that probation.  *See supra* Part II. When revoking Mr. Hunter's probation in April 2023, the Superior Court incorrectly sentenced Mr. Hunter to a determinate sentence that included a term of supervised release, ECF No. 11-11, but the court subsequently corrected its mistake in June 2024 by reinstating Mr. Hunter's 1996 indeterminate sentence, ECF No. 11-15.  The Commission is therefore correct that Mr. Hunter is

not serving a term of supervised release, let alone an unlawful one. Instead, he is on parole consistent with the terms of his original February 1996 sentence and his June 2024 amended sentence. Unless the Commission chooses to "terminate legal custody over [Mr. Hunter] before expiration of [his] sentence," D.C. Code § 24-404(a-1)(1), he will be under the supervision of his parole officer until his "statutory release date," which is December 3, 2027, ECF No. 11-2, at 3. Additionally, if Mr. Hunter again violates the terms of his parole, the Commission may revoke his parole or modify any of the terms of his release. D.C. Code § 24-406(a).

In addition to contending that he is serving a term of supervised release, Mr. Hunter appears to argue that he has fully satisfied his sentence. Specifically, he maintains that he is entitled to retroactive good time credit for his years of incarceration under D.C. Code § 24-404(a)(1), such that he has fully completed his maximum thirty-one-year sentence. *See* Pet. for Writ of Habeas Corpus at 2, *Hunter v. Warden*, No. 24-CV-2121 (D.D.C. Dec. 16, 2024), ECF No. 1; Pet. for Writ of Habeas Corpus at 2, *Hunter v. Fed. Bureau of Prisons*, No. 25-CV-1176 (D.D.C. Apr. 11, 2025).[6]

Even if the court assumed that Mr. Hunter's argument about the *BOP's* or the *D.C. Jail's* obligation to award good time credit was properly before the court in this habeas action against the *U.S. Parole Commission*—and even if the court assumed that Mr. Hunter was entitled the full fifty-four days of retroactive good time credit for each year he was incarcerated despite his history of disciplinary infractions, *see* 18 U.S.C. § 3624(b); D.C. Code § 24-403.01a(a)(1); ECF No. 11-1—the court would still dismiss his petition for failure to state a claim. That is because the D.C. Code is clear: "good time credit toward the service of [a] defendant's sentence . . . . shall

---

[6] Because Mr. Hunter is proceeding pro se and the court has an obligation to liberally construe his petition, the court takes judicial notice of the filings in his other pending cases. *See supra* n.3.

apply to the minimum and maximum *term of incarceration*," D.C. Code § 24-403.01a(a)(1)-(2) (emphasis added), but "a parolee shall remain in the legal custody and under the control of the [U.S.] Attorney General . . . . until . . . [t]he expiration of the maximum of the . . . terms specified in his or her sentence *without regard to good time allowance*," *id.* § 24-404(a)(1) (emphasis added).  In plain English, good time credit may reduce the maximum amount of time someone serves a sentence *in prison*, but it has no effect on how long that person will remain under supervision once released on parole.  *See Ramsey v. Faust*, 943 F. Supp. 2d 77, 82 (D.D.C. 2013) ("[T]he application of good time credit neither advances [the defendant's] full-term date nor otherwise hastens the expiration of his maximum sentence.  Rather, '[g]ood time credits operate to allow a prisoner to become eligible for release earlier than otherwise authorized by the sentence he received, to advance an inmate's eligibility date for release on parole and to decrease an inmate's mandatory release date.'" (quoting *Lorando v. Waldren*, 629 F. Supp. 2d 60, 61 (D.D.C. 2009))); *Coachman v. U.S. Parole Comm'n*, 816 F. Supp. 2d 20, 23 (D.D.C. 2011) ("An award of good time credit would have had no effect on the length of time petitioner was subject to [U.S. Parole Commission] supervision.").

For these reasons, Mr. Hunter's habeas petition fails to state a claim and the court will grant the Commission's motion to dismiss under Rule 12(b)(6).[7]

---

[7] Mr. Hunter filed another habeas petition against the U.S. Parole Commission two weeks after he filed this one.  Pet. for Writ of Habeas Corpus, *Hunter*, No. 24-CV-2622 (D.D.C. Sep. 9, 2024), ECF No. 1.  Because that petition raises the same challenge to his sentence and involves the same respondent as here, the court will dismiss it as duplicative.  *See Bowe-Connor v. McDonald*, No. 15-CV-269, 2015 WL 807537, at *1 (D.D.C. Feb. 25, 2015) (dismissing identical complaint filed six days after the original was docketed).

## VI. CONCLUSION

For the foregoing reasons, the court will grant the Commission's Motion to Dismiss, ECF No. 11, and deny Mr. Hunter's Motion for Status Report, ECF No. 13, as moot. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   September 22, 2025